IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BOARD OF TRUSTEES, ROOFERS UNION LOCAL 30 COMBINED HEALTH AND WELFARE FUND, et al. | : : : |
| Plaintiffs, | : CIVIL ACTION : : |
| v. | : NO. 15-2820 : |
| LIBERTY MUTUAL INSURANCE COMPANY, | : : : |
| Defendant. | : : |

**MEMORANDUM**

BUCKWALTER, S.J.                                                                                                    July 14, 2015

Currently pending before the Court is Defendant Liberty Mutual Insurance Company's ("Liberty's") Motion to Dismiss or, in the Alternative, to Strike Claim for Bad Faith and Attorneys' Fees. For the following reasons, the Motion is granted without prejudice.

**I.     FACTUAL BACKGROUND**

According to the facts set forth in the Complaint, Carotenuto Brown LLC ("Company") served as a subcontractor on a construction project at 1616 Walnut Street, Philadelphia, PA ("Walnut Street Project") under general contractor Hunter Roberts Construction Group, LLC ("Hunter Roberts") from at least April 2014 until May 2014. (Compl. ¶¶ 15, 17.) On January 29, 2013, Defendant Liberty Mutual issued a payment bond to Hunter Roberts in the amount of $655,000.00 (the "Bond") to insure payment "for labor, materials and equipment furnished for use in the performance of" the Walnut Street Project. (Id. ¶ 18.) The Bond is designated as

Bond No. 019-041,994 and secures payment of amounts due under the Labor Contract for wages, benefits, and dues.  (Id.)  The Complaint alleges that the Company failed to pay contributions, interest, liquidated damages, and attorneys' fees of at least $87,290.48 to Plaintiffs Board of Trustees, Roofers Union Local 30 Combined Health and Welfare Fund; Board of Trustees, Roofers Union Local 30 Combined Pension Fund; Board of Trustees, Roofers Union Local 30 Combined Vacation Fund; Board of Trustees, Roofers Union Local 30 Combined Annuity Fund; Board of Trustees, Roofers Local 30 Joint Apprenticeship Fund of Philadelphia and Vicinity; Local Union No. 30 of the United Union of Roofers, Waterproofers and Allied Workers, Roofers Local 30 Political Action and Education Fund ("PAC"); and Roofing Contractors Association Industry Fund ("RCAIF") (collectively "Plaintiffs").

Plaintiffs initiated litigation on May 19, 2015 alleging breach of the surety bond. Specifically, the Complaint asserts that (a) Plaintiffs gave Liberty Mutual timely notice of their claim under the Bond; (b) that Liberty Mutual is liable to the Plaintiffs for payment in at least the sum of $87,290.48 under the Bond; and (c) that Liberty Mutual has failed to pay the amount due and owing to Plaintiffs despite the original notice of claim and follow up notices and requests for payment.  (Id. ¶¶ 21-23.)  In addition, the Complaint asserts that Liberty Mutual has acted unreasonably and in bad faith in failing and refusing to pay the Plaintiffs' claims, thereby entitling Plaintiffs to attorneys' fees and costs.

On June 23, 2015, Defendant filed the current Motion to Dismiss or, in the Alternative, to Strike Claim for Bad Faith and Attorneys' Fees.  Plaintiffs responded on July 7, 2015, making this Motion ripe for judicial consideration.

## II.     STANDARD OF REVIEW

### A.     Motion to Dismiss Standard

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P.12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. Following these basic dictates, the Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), subsequently defined a two-pronged approach to a court's review of a motion to dismiss. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Thus, although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678–79.

Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.; see also Phillips v. Cnty. of

Allegheny, 515 F.3d 224, 232–34 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level.'" (quoting Twombly, 550 U.S. at 555)).

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static. Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. Phillips, 515 F.3d at 233. Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

B. **Motion to Strike Standard**

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Impertinent" matter consists of statements that do not pertain, and are not necessary, to the issues in question. Cech v. Crescent Hills Coal Co., No. Civ.A.96-2185, 2002 WL 31002883, at *28 (W.D. Pa. July 15, 2002). A "scandalous" matter or pleading is one that casts a derogatory light on someone, uses repulsive language, or detracts from the dignity of the court. Carone v. Whalen, 121 F.R.D. 231, 233 (M.D. Pa. July 29, 1988). Although a court has considerable discretion with motions to strike, as a general rule they are not favored and "usually

will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." River Road Devel. Corp. v. Carlson Corp., No. Civ.A.89–7037, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1382, 809–10, 815 (1969)). Thus, striking a pleading or a portion of a pleading "is a drastic remedy to be resorted to only when required for the purposes of justice." DeLa Cruz v. Piccari Press, 521 F. Supp. 2d 424, 428 (E.D. Pa. 2007) (quotations omitted).

### III.  DISCUSSION

In the present Motion, Defendant moves to dismiss Plaintiffs' claim for bad faith and strike any allegations of "bad faith"—and any accompanying claim for attorneys' fees based on alleged bad faith—on the part of Defendant.

A common law bad faith tort claim does not exist in Pennsylvania; rather, parties alleging bad faith on the part of an insurer may bring such claims only under 42 Pa.C.S. § 8371. See Birth Centers v. St. Paul Cos., Inc., 787 A.2d 376, 390 (Pa. 2001) (Nigro, J., concurring); Simmons v. Nationwide Mut. Fire Ins. Co., 788 F. Supp. 2d 404, 408 (W.D. Pa. 2011). Pennsylvania courts have noted "fundamental differences" between contracts of insurance and surety agreements. U.S. ex rel. SimplexGrinnell, LP v. Aegis Ins. Co., No. Civ.A.08-1728, 2009 WL 90233, at *3 (M.D. Pa. Jan. 14, 2009). "Recognition of these critical distinctions between insurance and suretyship has led district courts to hold that an individual may not bring a claim for bad faith pursuant to 42 Pa. Cons. Stat. Ann. § 8371 against a surety." Id. at *4. In other words, in the surety context, courts have held that no cause of action exists for bad-faith claims sounding in tort. See, e.g., Reginella Constr. Co., Ltd. v. Travelers Cas. and Sur. Co. of Am.,

949 F. Supp. 2d 599, 614 n.2 (W.D. Pa. 2013) (holding that Pennsylvania's bad faith statute does not allow for a bad faith action against a surety), aff'd, 568 F. App'x 174 (3d Cir. 2014); Western Sur. Co. v. WGG, Inc., No. Civ.A.07-151, 2009 WL 222429, at *4 (M.D. Pa. Jan. 29, 2009) ("In the surety context, courts have held that no cause of action exists for bad-faith actions sounding in tort."); Intercon Constr. Inc. v. Williamsport Mun. Water Auth., No. Civ.A.07–1360, 2008 WL 239554, at *3 (M.D. Pa. Jan. 28, 2008) (holding that "a surety cannot be held liable for bad faith under § 8371"); Superior Precast, Inc. v. Safeco Ins. Co. of Am., 71 F. Supp. 2d 438, 454 (E.D. Pa. 1999) (same); Norwood Co. v. RLI Ins. Co., No .Civ.A.01-6153, 2002 WL 485694, at *5 (E.D. Pa. Apr. 1, 2002) ("[T]he plain language of § 8371 indicates that a statutory bad faith claim may not be asserted against a surety under Pennsylvania law.").

Under this unequivocal and well-established interpretation of Pennsylvania law, Plaintiffs, in this case, may not recover from Defendant under the Pennsylvania bad faith statute. Accordingly, any separate claim for bad faith set forth in the Complaint must be dismissed.[1] Moreover, the allegations of Paragraph Twenty-Four of the Complaint asserting that Defendant has "acted unreasonably and in bad faith in failing and refusing to pay Plaintiffs' claims" must be stricken as impertinent to the matters in question in this case.

The only remaining issue is whether Plaintiffs' general claim for attorneys' fees as set forth in the Complaint must likewise be dismissed. Defendant argues that, in such an ordinary

---

[1] Plaintiffs argue that "[i]n bringing its Motion to Dismiss, Defendant does not substantively argue that the Complaint fails to state a cause of action for breach of a surety bond obligation. Accordingly, Defendant's Motion to Dismiss should be denied, as the Funds clearly have stated a cause of action for breach of surety bond." (Pls.' Resp. Opp'n Mot. to Dismiss 5.) This argument appears to misunderstand Defendant's Motion. Defendant does not seek to dismiss the Complaint in its entirety, but rather only to dismiss any separate claim for bad faith and request for attorneys' fees.

breach of contract claim where the contract at issue does not provide for the recovery of attorneys' fees, Plaintiffs can only recover attorneys' fees under a statute that allows for such recovery.  Because no such statute applies here, Defendant contends that Plaintiffs' request for attorneys' fees must be dismissed.

Plaintiffs respond that attorneys' fees and costs may be recovered without reference to either the contract or the bad faith statute.  They note that, although "[t]he settled law of this Commonwealth is that attorneys' fees are recoverable from an adverse party to a cause only when provided for by statute, or when clearly agreed to by the parties," Fidelity-Philadelphia Trust Co. v. Philadelphia Transp. Co., 173 A.2d 109, 113 (Pa. 1961), "[a]n exception applies . . . 'when [a prevailing party's] opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons[.]'" Board of Trustees, Roofers Local No. 30 Combined Welfare Fund v. Int'l Fid. Ins. Co., 63 F. Supp. 3d 459, 474–75 (E.D. Pa. 2014) (citing F.D. Rich Co., Inc. v. U.S. for Use of Indus. Lumber Co., Inc., 417 U.S. 116, 129 (1974); Roadway Express, Inc. v. Piper, 447 U.S. 752, 765–66 (1980)).  "To prevail in a request for attorneys' fees under the bad faith exception, a party 'bears a heavy burden in establishing bad faith and the Court must exercise this power sparingly.'" Id. at 475 (allowing claim for attorneys' fees in breach of contract case against surety to survive summary judgment where a genuine issue of fact existed as to whether the defendant surety acted in bad faith during the course of the litigation) (citations omitted).

Plaintiffs' argument misunderstands this principle.  "The general rule of law, known as the 'American Rule' is that each party to a lawsuit bears its own attorneys' fees." Ford v. Temple Hosp., 790 F.2d 342, 346 (3d Cir. 1986).  The Third Circuit has clarified that "the power to assess costs on an attorney in a given case is a power which 'courts should exercise *only* in

instances of a serious and studied disregard for the orderly process of justice.'" Id. (emphasis added) (citing Overnite Transp. Co. v. Chicago Indus. Tire Co., 697 F.2d 789, 795 (7th Cir. 1983) (quoting Kiefel v. Las Vegas Hacienda, Inc., 404 F.2d 1163, 1167 (7th Cir. 1968))). The Third Circuit has further stated that "there must be a finding of willful bad faith on the part of the offending attorney" and "what would be indicative of bad faith . . . would be some indication of an intentional advancement of a baseless contention that is made for an ulterior purpose, e.g., harassment or delay." Id. "An award should be made only in extraordinary circumstances and requires more than a showing of a weak or legally inadequate case." E.E.O.C. v. BE & K Eng'g Co., 562 F. Supp. 2d 641, 645 (D. Del. 2008) (discussing the required showing of bad faith to warrant an award of attorneys' fees from litigating an action under the Age Discrimination in Employment Act) (citations omitted).

In light of this jurisprudence, it is clear that the exception to the American Rule on which Plaintiffs rely deals with either bad faith initiation/defense of the lawsuit or conduct of the party or its attorney during the course of the litigation—it is not intended as an end run around the insurance bad faith statutes or to punish bad faith that does not involve willful abuse of the judicial process. Plaintiffs' claim for attorneys' fees as set forth in the Complaint, however, seeks such fees based only on Defendant's alleged bad faith and unreasonable failure and refusal to pay Plaintiffs' claims prior to the litigation ever being initiated. (Compl. ¶ 24.) In other words, Plaintiffs rest their request for attorneys' fees solely on the precise type of statutory bad faith action under 42 Pa. C.S. § 8371 that is routinely prohibited as against a surety. Plaintiff makes no allegation that Defendant's opposition to the Complaint constitutes a baseless contention made for an ulterior purpose, that Defendant or its counsel has shown disregard for

the orderly process of justice during the course of this litigation, or that extraordinary circumstances justify granting an exception to the American Rule.  Indeed, having just begun litigation, Defendant could not already have engaged in the misconduct on which an award of attorneys' fees could be based.

In short, as alleged in the Complaint, Plaintiffs' bad faith claim and request for attorneys' fees must be dismissed and Paragraph Twenty-Four of the Complaint asserting Defendant's bad faith failure to pay Plaintiffs' claim must be stricken.  To the extent, during the progression of the case, (a) Defendant commits significantly egregious conduct or advances meritless legal positions solely for harassment and delay purposes, and (b) Plaintiffs prevail on their claims—thereby satisfying both criteria for an exception to the American Rule of attorneys' fees—Plaintiffs may, at that time, bring an appropriate motion requesting an award of attorneys' fees.

An appropriate Order follows.